TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
R. TRAVIS CAMPBELL (SBN 271580)
tcampbell@snllp.com
LIANA MAYILYAN (SBN 295203)
lmayilyan@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000

Attorney for Defendant
Cavalry SPV I, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER QUIROZ,<br><br>              Plaintiff,<br><br>vs.<br><br>CAVALRY SPV I, LLC,<br><br>              Defendant | Case No.: 2:16-cv-04779-JFW-E<br><br>**DEFENDANT CAVALRY SPV I, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br> Date: November 21, 2016<br> Time: 1:30 PM<br> Courtroom: Courtroom 16<br><br> The Hon. John F. Walter |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 21, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 16 of this Court, located at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, the Honorable John F. Walter presiding, defendant Cavalry SPV I, LLC ("Cavalry") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"), for an Order compelling plaintiff Javier Quiroz ("Quiroz") to arbitrate the claims he asserts in this action on an individual basis. Cavalry further seeks an Order staying this action pending completion of arbitration proceedings.

This Motion is made following meet and confer by counsel as required by Local Rule 7-3, and following the in person meet and confer required by the Court's Order dated September 7, 2016, which occurred on September 12, 2016. *See* Doc. No. 22. The motion is made on the grounds that a valid, enforceable and irrevocable agreement to arbitrate exists between the parties which encompasses Quiroz's claims. Pursuant to the FAA, upon election by either party, Quiroz must arbitrate his claims on an individual basis, as required by the arbitration agreement Quiroz entered into with Cavalry's predecessor in interest, GE Money Bank. This action must be stayed pending completion of the arbitration.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Terry Rivera and Martha Koehler, all papers and pleadings on file, and all other evidence or argument the Court may permit at the hearing in this matter.

DATED:  October 20, 2016                SIMMONDS & NARITA LLP


                                        By:    s/Tomio B. Narita
                                               Tomio B. Narita
                                               Attorney for Defendant
                                               Cavalry SPV I, LLC

# Table of Contents

I.   INTRODUCTION ...........................................................................................1

II.  STATEMENT OF FACTS .............................................................................2

    A.   The Parties ...........................................................................................2

    B.   The Allegations Of The Complaint.....................................................3

    C.   The Account And The Arbitration Agreement ....................................4

    D.   The Purchase Of The Account By Cavalry...........................................7

III. ARGUMENT .................................................................................................7

    A.   The Federal Arbitration Act Mandates That This Court Must Compel
        Arbitration Of Claims That Are Subject To A Binding Arbitration
        Agreement ............................................................................................7

    B.   The Agreement To Arbitrate Is Valid Under Utah Law, Which
        Applies To The Parties' Agreement.....................................................9

    C.   The Claims Asserted By Quiroz Fall Squarely Within The Scope Of
        The Agreement To Arbitrate ...............................................................11

    D.   Calvary Is Entitled To Invoke The Arbitration Agreement As
        Synchrony's Assignee. ........................................................................14

    E.   Quiroz Must Arbitrate His Claims On An Individual (Non-Class)
        Basis, And This Case Should Be Stayed Pending The Outcome Of
        The Arbitration Proceedings ...............................................................15

IV.  CONCLUSION..............................................................................................16

# Table of Authorities

## Federal Cases

*A & G Coal Corp. v. Integrity Coal Sales, Inc.*,
600 F. Supp. 2d 709 (W.D. Va. 2009) .....................................................13

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)...........................................................................7

*Amer. Express Co. v. Italian Colors Restaurant*,
et al., 133 S. Ct. 2304 (2013) ............................................................1

*Anderson v. United States*,
966 F.2d 487 (9th Cir. 1992) ............................................................10

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) .............................................. 1, 7, 8, 15, 16

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)................................ 11, 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)................................................................ 2, 7, 13

*Caudill v. Cavalry SPV I, LLC*,
2014 WL 4230811 (E.D. K.Y. Aug. 25, 2014) .....................................14

*Chico v. Hilton Worldwide, Inc.*,
2014 WL 5088240 (C.D. Cal. Oct. 7, 2014)........................................10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ..........................................................8

*Clemins v. GE Money Bank*,
2012 WL 5868659 (E.D. Wis. Nov. 20, 2012)................................ 11, 12

*Collins v. Burlington N. R. Co.*,
867 F. 2d 542 (9th Cir. 1989) ...........................................................16

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F. 3d 1277 (9th Cir. 2009) ...........................................................9

*CompuCredit Corp. v. Greenwood*,
132 S. Ct. 665 (2012) ........................................................................1

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ...........................................................................8

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ...........................................................................9

*Galbraith v. Resurgent Capital Services*,
2006 WL 2990163 (E.D. Cal. Oct. 19, 2006) ...................................14

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)...................12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .............................................................................9

*In re Bucknum*,
951 F.2d 204 (9th Cir. 1991) ............................................................10

*ITT Educ. Servs., Inc. v. Arce*,
533 F.3d 342 (5th Cir. 2008) ............................................................13

*Jallo v. Midland Funding, LLC*,
2014 WL 5810203 (S.D. Cal. Nov. 4, 2014) ....................................14

*Khanna v. Am. Express Co.*,
2011 WL 6382603 (S.D. N.Y. Dec. 14, 2011) ..................................11

*Kilgore v. KeyBank, Nat. Ass'n*,
718 F.3d 1052 (9th Cir. 2013) ..........................................................11

*KPMG LLP v. Cocchi*,
132 S. Ct. 23 (2011) ...........................................................................15

*Mahon v. Credit Bureau of Placer Cty, Inc.*,
171 F.3d 1197 (9th Cir. 1999) ............................................................10

*Martin v. Cavalry SPV I, LLC*,
2014 WL 1338702 (E.D. K.Y. Mar. 31, 2014)............................ 12, 14

*Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.*,
473 U.S. 614 (1985)........................................................................9, 11

*Montalbano v. Cavalry Portfolio Services, LLC*,
2013 WL 593988 (W.D. Pa. Feb. 15, 2013) .......................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ...........................................................................7, 9

*Perry v. Thomas*,
482 U.S. 483 (1987)...............................................................................8

*Pollice v. Nat'l Tax Funding, L.P.*,
225 F. 3d 379 (3d Cir. 2000)...............................................................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ................................................................. 2, 7, 13

*Randolph v. Green Tree Fin. Corp.*,
244 F.3d 814 (11th Cir. 2001) ............................................................12

*Rent-A-Center W., Inc. v. Jackson*,
561 U.S. 63 (2010)...........................................................................2, 13

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220 (1987).................................................................................9

*Shetiwy v. Midland Credit Mgmt., Inc.*,
959 F. Supp. 2d 469 (S.D.N.Y. 2013) ..................................................................11

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ..............................................................................11

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002) ..............................................................................9

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
559 U.S. 662 (2010) ......................................................................................8, 15

*Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*,
774 F.2d 524 (1st Cir. 1985) ..............................................................................13

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).....................................12

*Volt Info. Scis., Inc. V. Board of Trs. Of Leland Stanford Junior Univ.*,
27 489 U.S. 468 (1989)..........................................................................................8

*Wolf v. Langemeier*,
2010 WL 3341823 (E.D. Cal. Aug. 24, 2010).....................................................14

*Wynne v. Am. Express Co*,
2010 WL 3860362 (E.D. Tex. Sept. 30, 2010).....................................................11

## Federal Statutes

15 U.S.C. § 1692 .....................................................................................................3
9 U.S.C. § 1 .............................................................................................................1
9 U.S.C. § 2 .............................................................................................................7
9 U.S.C. § 3 ...........................................................................................................16

## State Statutes

Cal. Bus. & Prof. Code § 654.3(c)......................................................................1, 3
Cal. Bus. & Prof. Code § 17200 .............................................................................4
Cal. Civ. Code § 1788 .............................................................................................3

QUIROZ V. CAVALRY SPV I, LLC   (CASE NO.: 2:16-CV-04779-JFW-E)
DEFENDANT CAVALRY SPV I, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                    v

Utah Code Ann. § 25-5-4(2)(e) .................................................................10

# I.   **INTRODUCTION**

In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), and in other recent decisions, the United States Supreme Court has emphatically reaffirmed the strong policy favoring enforcement of private agreements to arbitrate, as reflected in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA").[1]  The plaintiff here, Javier Quiroz ("Quiroz"), entered into a credit card agreement with the defendant's predecessor, GE Money Bank ("GEMB").[2]  The agreement contained a broad arbitration provision, whereby Quiroz agreed that claims would be resolved through binding, individual (non-class action) arbitration.  Subsequently, defendant Cavalry SPV I, LLC ("Cavalry") purchased all right, title and interest to the account, and all rights under the agreement were transferred as part of the purchase.  Cavalry stands in the shoes of GEMB, and it now invokes the arbitration provision.

The claims asserted by Quiroz against Cavalry are subject to the broad arbitration provision.  Indeed, counsel for Quiroz previously filed another action asserting nearly identical claims based on the alleged violation of the former version of section 654.3(c) of the California Business and Professions Code ("Section 654.3(c)"), and the Honorable Jane Johnson of the Los Angeles Superior

---

[1]   *See also Amer. Express Co. v. Italian Colors Restaurant, et al*., 133 S. Ct. 2304, 2311 (2013) (enforcing arbitration clause containing class action waiver despite argument that cost of arbitrating antitrust claim would exceed potential recovery); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) (claim under Credit Repair Organizations Act could be compelled to arbitration).

[2]   On October 1, 2011, GE Money Bank became known as GE Capital Retail Bank; on June 2, 2014, GE Capital Retail Bank was renamed Synchrony Bank. Declaration of Martha Koehler In Support Of Motion To Compel Arbitration ("Koehler Decl."), ¶ 1.

Court granted GEMB's motion to compel arbitration.  *See Martinez v. CACH, LLC*, L.A.S.C. Case No. BC559772 (Nov. 3, 2015 Order) (Request for Judicial Notice ("RJN")) at Exs. A and B.  As in *Martinez*, Quiroz entered into a valid and enforceable arbitration agreement, and his claim challenging the validity of the credit agreement falls within the arbitration agreement's broad scope.  This conclusion is the same, notwithstanding, that Calvary, rather than GEMB, is the moving party, since the credit agreement provides that GEMB's rights under the agreement could be assigned.

As discussed below, and as instructed by the Supreme Court, this Court need only determine if there is a valid arbitration agreement between the parties and if Plaintiff's claims fall within that agreement's broad scope.  If the answer is yes, as Judge Johnson previously held in *Martinez*, then the arbitration agreement is severable from the card agreement, and the challenge by Quiroz to the validity of the card agreement as a whole is for the arbitrator, not the Court, to decide.[3]

The motion to compel arbitration should be granted and this action should be stayed pending the resolution of the arbitration.

## II.   STATEMENT OF FACTS

### A.   The Parties

Cavalry is a limited liability company with its principal offices in Vahalla, New York.  *See* Declaration of Terry Rivera in Support Of Motion To Compel Arbitration ("Rivera Declaration"), ¶ 3. Cavalry is in the business of purchasing delinquent financial obligations from banks and other financial institutions. *Id.*

---

[3]  *See, e.g., Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("*Rent-A-Center*"); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("*Buckeye*"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("*Prima Paint*").

1   Quiroz is an individual who currently resides in Ventura County, California.  *See*

2   Complaint (Doc. No. 1) ¶ 8.

3        **B.**    **The Allegations Of The Complaint**

4        On or about January 4, 2011, Quiroz and his wife visited Santa Paula Dental

5   Care, where his wife was obtaining dental work.  *Id.* ¶ 12.  He claims the staff at

6   Santa Paula Dental Care enrolled him in a financing program to pay for his wife's

7   dental work, and did so without providing any details about the program, and

8   without explaining he would be opening a revolving credit account.  *Id*. ¶ 13.  The

9   staff at Santa Paula Dental Care allegedly "filled out a credit application and

10  signed Plaintiff up for a credit card through [a] GE CAPITAL RETAIL BANK

11  subsidiary or otherwise related entity CareCredit" without first obtaining Quiroz's

12  signature on a notice he claims was required by Section 654.3(c).  *Id*. ¶ 14.  Quiroz

13  admits GEMB approved him for an open-end credit card (the "Account"), to which

14  Santa Paula Dental Care charged approximately $3,135.00 for his wife's dental

15  services, and that GEMB began sending him monthly billing statements relating to

16  the Account.  *Id.* ¶¶ 15, 17.  Quiroz further admits paying at least $3,135 between

17  the time he opened the Account and October 15, 2013.  *Id.* ¶ 18.

18       His Account was sold to Cavalry on December 10, 2013, and Cavalry began

19  contacting Quiroz to attempt to collect the balance.  *Id.* ¶¶ 19-20. Cavalry allegedly

20  filed suit against him on July 2, 2015 to collect the unpaid balance, but later

21  dismissed that action.  *Id.* ¶ 20.

22       Quiroz contends the unpaid balance on the Account "was invalid and

23  uncollectible" because his dentist allegedly failed to provide him the notice

24  required by Section 654.3(c).  *Id.* ¶ 18.  Thus, according to Quiroz, Cavalry's

25  attempts to collect the Account violated portions of the Fair Debt Collection

26  Practices Act, 15 U.S.C. § 1692, *et seq*., the Rosenthal Act, Cal. Civ. Code § 1788,

*et seq*. and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. *Id*. ¶¶ 37-74.  Quiroz also purports to represents a class of similar situated persons. *Id*. ¶¶ 27-29.

### C.   The Account And The Arbitration Agreement

Quiroz signed an application for the Account on January 4, 2011 (the "Application"), and the Application was submitted to GEMB (now known as Synchrony, *supra*, fn. 2).  *See* Koehler Decl. ¶ 6, Ex. 1.  Synchrony is a federally charted Savings Association based in Utah.  *Id*. ¶ 1.  All Synchrony accounts are governed by a written agreement setting forth the terms and conditions of the account (the "Card Agreement").  *Id*. ¶ 7.  The Card Agreement contains a choice of law provision calling for the application of Utah law.  *Id*. ¶ 8, Ex. 3.

As part of the account-opening process, Synchrony requires merchant providers, like Santa Paula Dental Care, to give customers a copy of the blank CareCredit account application, which includes the Card Agreement as an attachment.  *Id*. ¶ 7 at Ex. 2. The Application expressly informs the customer that Card Agreement:

> **(1) INCLUDES A DISPUTE AND CLAIM RESOLUTION (INCLUDING ARBITRATION) PROVISION THAT MAY LIMIT MY RIGHTS UNLESS I REJECT THAT PROVISION UNDER THE AGREEMENT'S INSTRUCTIONS.**

*Id*. (¶ 3 of Application). Once the customer completes the application, it is detached from the Card Agreement, and the Card Agreement is given to the consumer.  *Id*.  The application is retained by the provider (i.e., Santa Paula Dental Care).  *Id*.

Not only was the Card Agreement provided to Quiroz at the time he signed the Application, the Card Agreement was also mailed to him by Synchrony, along

QUIROZ V. CAVALRY SPV I, LLC   (CASE NO.: 2:16-CV-04779-JFW-E)
DEFENDANT CAVALRY SPV I, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                    4

with his card, on January 5, 2011.  *Id.* ¶ 8, Ex. 3.  The notes relating to the Account confirm the credit card and Card Agreement were mailed to him, and that neither were returned as undeliverable.  *Id.* ¶¶ 9-10, Ex. 4.  Synchrony mailed monthly statements to Quiroz to the same address he provided in the Application, and he made payments in response to the statements.  *Id.* ¶ 11, Ex. 5.

The Card Agreement includes a provision that provides for individual, non-class arbitration of all disputes arising from or relating to the Account (the "Arbitration Agreement").  *Id.* Ex. 3, at p. 12 (¶ 24). It provides in relevant part as follows:

> **DISPUTE AND CLAIM RESOLUTION**
> **(INCLUDING ARBITRATION) PROVISION**
>
> **General/Requirement to Arbitrate. PLEASE READ THIS PROVISION CAREFULLY. UNLESS YOU SEND US THE REJECTION NOTICE DESCRIBED BELOW THIS PROVISION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**
>
> This Provision replaces any existing arbitration provision with us and will stay in force no matter what happens to your account, including termination. Upon demand, and except as otherwise provided below, you and we must arbitrate individually any dispute or claim between you, any joint cardholder and/or any additional cardholder, on the one hand; and us, our affiliates, agents and/or dealers/merchants/retailers or participating professionals, on the other hand, if the dispute or claim arises from or relates to your account. However, we will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) any claim by us that only involves our effort to collect money you owe us. However, if you respond to a collection lawsuit by

claiming that we engaged in any wrongdoing, we may require you to arbitrate.

**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY CARDHOLDER WHO IS NOT A JOINT OR ADDITIONAL CARDHOLDER WITH YOU ON YOUR ACCOUNT (AN "UNRELATED CARDHOLDER"), AND YOU AGREE THAT NO UNRELATED CARDHOLDER MAY BRING ANY CLAIMS AGAINST US ON YOUR BEHALF. CLAIMS BY YOU AND BY AN UNRELATED CARDHOLDER MAY NOT BE JOINED IN A SINGLE ARBITRATION.** Only a court may decide whether any part of this paragraph is enforceable. If it is finally determined that this paragraph is not fully enforceable, only this sentence of the Provision will remain in force and the remainder of the Provision will be null and void, provided that the court's determination concerning the enforceability of this paragraph shall be subject to appeal.

*Id.*  The Arbitration Agreement also provides a specific procedure by which Quiroz could have sent a written notice to reject the requirement that he arbitrate his disputes, as follows:

**Rejecting this Provision**. You may reject this Provision, in which case only a court may be used to resolve any dispute or claim. Rejection will not affect any other aspect of this Agreement. To reject, you must send us a notice within 60 days after you open your account or we first provide you with a right to reject this Provision. The notice must include your name, address, and account number and be mailed to GE Money Bank, P.O. Box 981429, El Paso, TX 79998-1429. This is the only way you can reject this provision.

*Id.* at p. 13 (¶ 24). Thus, Quiroz had until March 5, 2011 (60 days from the date the Account was opened) to reject the Arbitration Agreement.  He did not, however, exercise his right to reject it.  *Id.* ¶¶ 13-14.

### D.   The Purchase Of The Account By Cavalry

When Quiroz failed to pay the balance due, the Account was charged off by Synchrony on January 22, 2014, with a balance of $2,843.49.  *Id.* ¶ 15.  All right, title and interest in the Account was sold in February, 2014 to Cavalry SPV I, LLC. *See* Rivera Decl., ¶¶ 4-5, Exs. A and B.  The Card Agreement provides that Synchrony "may sell, assign or transfer any or all of [it's] rights or duties under the Agreement or [Quiroz's] Account."  *See* Koehler Decl., Ex. 3 at p. 13 (¶ 26).

## III.   <u>ARGUMENT</u>

### A.   The Federal Arbitration Act Mandates That This Court Must Compel Arbitration Of Claims That Are Subject To A Binding Arbitration Agreement

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye*, 546 U.S. at 443 ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility*, 131 S. Ct. at 1748 ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . . ."). The Supreme Court has repeatedly recognized the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint*, 388 U.S. at 401.

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)); *AT&T Mobility LLC*, 131 S. Ct. at 1745.  In fact, the Supreme Court has confirmed that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC*, 131 S. Ct. at 1748.[4]  The Court has stated the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Here, Quiroz expressly agreed that the FAA governed the arbitration provision, and that it would apply when resolving claims through arbitration:

> This Provision is governed by the Federal Arbitration Act (the "FAA"). Utah law shall apply to the extent state law is relevant under Section 2 of the FAA in determining the validity of this Provision. The arbitrator must follow: (1) the substantive law, consistent with the FAA, that would apply if the matter had been brought in court, (2) this Provision, and (3) the administrator's rules. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

*See* Koehler Decl., Ex. 3, p. 13 (¶ 24).

Under the FAA, arbitration must be compelled where, as here: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  An arbitration agreement governed by the FAA

---

[4] *See also Volt Info. Scis., Inc. V. Board of Trs. Of Leland Stanford Junior Univ.*, 27 489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 28 684 (2010) (citations omitted).

is presumed to be valid and enforceable.  *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.  The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F. 3d 1277, 1284 (9th Cir. 2009).  Quiroz will not be able to meet this burden.

**B.    The Agreement To Arbitrate Is Valid Under Utah Law, Which Applies To The Parties' Agreement**

The Card Agreement and the Arbitration Agreement both contain a choice of law provision calling for the application of Utah law.  *See* Koehler Decl., Ex. 3 at pp. 4 (¶ 5), 13 (¶ 24).  Thus, Utah law governs the issue of whether an enforceable agreement to arbitrate exists.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002) (where agreement provided for application of Illinois law, "[w]e must conclude that the Agreement incorporates the FAA's rules for arbitration, but Illinois substantive law applies in all other respects.").

The Arbitration Agreement is binding under Utah law, which provides that "[a] credit agreement is binding an enforceable . . . if: (i) the debtor is provided

with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the agreement or otherwise uses the credit offered." Utah Code Ann. § 25-5-4(2)(e).  Utah also permits the use of class action waivers in consumer credit agreements.  *See id.* § 70C-4-105 ("[A] creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract").

In this case, consistent with the requirements of Utah law, Quiroz was provided with the Arbitration Agreement on two separate occasions – once when he applied for the Account, and again when the Card Agreement and his card were mailed to him at the address he provided in his application.[5]  *See* Koehler Decl., ¶¶ 7-10, Exs. 2-4. There is no question he received the Agreement, because it was mailed to the address he provided, and there is no record it was returned to Synchrony as undeliverable.  *Id.* ¶ 10.[6]

---

[5]  The Plaintiff's claim that his "sole language" is Spanish does not defeat the conclusion that he accepted, and is bound by, the terms of the Arbitration Agreement. *See Chico v. Hilton Worldwide, Inc.*, 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014) (holding that, "even if Plaintiff could not understand or even read the [arbitration agreements], the Court concludes that he assented to their terms.").

[6]  *See Mahon v. Credit Bureau of Placer Cty, Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) (under the Mailbox Rule, the Court presumes a letter is received shortly after it is mailed) (citing *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992)).  To overcome the presumption of mailing and receipt, a party must prove "by clear and convincing evidence that the mailing was not, in fact, accomplished." *See In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991). Notably, Plaintiff had 60 days to opt out of the Arbitration Agreement; again, he did not do so.  The failure to opt-out when the right is provided defeats any

There also is no question that Quiroz applied for and used the Account to finance dental work for his wife, or that he made payments on the Account in response to the statements that were mailed to him.  *Id.* ¶ 11, Ex. 5; *see also* Compl., ¶¶ 17-18.

By using the Account, Quiroz accepted the Agreement, including the Arbitration Agreement.  Numerous decisions have so held.  *See Shetiwy v. Midland Credit Mgmt., Inc.*, 959 F. Supp. 2d 469, 472 (S.D.N.Y. 2013); *Clemins v. GE Money Bank*, 2012 WL 5868659, at *1-2 (E.D. Wis. Nov. 20, 2012); *Khanna v. Am. Express Co.*, 2011 WL 6382603, at *3-4 (S.D. N.Y. Dec. 14, 2011); *Wynne v. Am. Express Co*, 2010 WL 3860362, at *7 (E.D. Tex. Sept. 30, 2010); *see also Martinez*, Case No. BC559772 (RJN Exs. A and B).

## C.   The Claims Asserted By Quiroz Fall Squarely Within The Scope Of The Agreement To Arbitrate

Once it is determined that parties have entered into a binding arbitration agreement an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).  Similarly, "[a]ny doubts concerning the scope of arbitrable issues should be resolve in favor of arbitration." *Mitsubishi Motors*, 473 U.S. at 626; *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high.").  Where the clause is broad, as is the

claim of procedurally unconscionability.  *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (finding no procedural unconscionability when plaintiff is given 60 days to reject arbitration provision).

case here, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).

Here, the Arbitration Agreement broadly encompasses "any dispute or claim" between the parties that "arises from or relates to [Plaintiff's] account." Koehler Decl., Ex. 3, at p. 12 (¶ 24).  The claims asserted by Quiroz indisputably fall within the broad scope of the Arbitration Agreement, as they arise out of Cavalry's alleged efforts to collect the unpaid balance of the Account that is subject to the Card Agreement containing the Arbitration Agreement.  *See* Doc. No 1 at ¶¶ 19-20.  The Arbitration Agreement's broad contractual language plainly covers Quiroz's claims, all of which clearly relate to the Account.  *See, e.g., Martin v. Cavalry SPV I, LLC*, 2014 WL 1338702, at *9 (E.D. K.Y. Mar. 31, 2014) (stating that plaintiff's claims und federal and state debt collection statutes are within scope of Synchrony's arbitration agreement); *Clemins*, 2012 WL 5868659, at *3 (holding that claims were within the scope of arbitration agreement, and that "[t]he phrase 'related to' is extremely broad and capable of expansive reach.") (internal quotation marks and citation omitted).[7]

---

[7] It is well-settled that statutory claims may be arbitrated.  *See, e.g., Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration."); *Randolph v. Green Tree Fin. Corp*., 244 F.3d 814, 818 (11th Cir. 2001) (Truth-in-Lending Act claims subject to arbitration agreement).

Indeed, Quiroz's central claim here – that the Card Agreement is invalid because his wife's dentist's allegedly failed to provide him with the notice required by Section 654.3(c) – falls within the Arbitration Agreement's scope (*i.e.*, the claim arises from and/or relates to the Account) and, pursuant to the FAA and settled United States Supreme Court precedent, the claim is arbitrable.

The fact that Quiroz claims the credit agreement is invalid does not impact whether an arbitrator can resolve that claim. As instructed by the Supreme Court, if the Court finds that there is an enforceable arbitration agreement, then, "[a]s a matter of substantive federal arbitration law," the arbitration agreement is "is severable from the remainder of the contract." *See Buckeye*, 546 U.S. at 445. Thus, an arbitration agreement survives even "in a contract that the arbitrator later finds to be void." *Id.* at 448; *see Rent-A-Center*, 561 U.S. at 70 (a challenge to the contract as a whole "does not prevent a court from enforcing a specific agreement to arbitrate"). As Supreme Court jurisprudence makes clear, the enforceability of the Card Agreement as a whole is irrelevant to the validity of the Arbitration Agreement. The validity of the Arbitration Agreement must be evaluated separately (by the Court), while the validity of the remainder of the Card Agreement is evaluated by the arbitrator.[8] *See, e.g., Rent-A-Center*, 561 U.S. a 70; *Buckeye*, 546 U.S. at 445-46; *Prima Paint*, 388 U.S. at 404.

---

[8] For this reason, even if an arbitrator later found the Card Agreement to be found invalid under Section 654.3 (which it is not), the Arbitration Agreement is severable from the remainder of the Card Agreement. Thus, pursuant to the FAA and Supreme Court precedent, the Arbitration Agreement continues intact. *See, e.g., ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 346-47 (5th Cir. 2008) (even if arbitrator invalidates contract, arbitration clause remains "separable," valid and enforceable); *A & G Coal Corp. v. Integrity Coal Sales, Inc.*, 600 F. Supp. 2d 709, 714 (W.D. Va. 2009) (even if a contract is void, parties may still form valid arbitration agreement and "that agreement to arbitrate should be enforced" under *Prima Paint*); *Unionmutual Stock Life Ins.*

QUIROZ V. CAVALRY SPV I, LLC   (CASE NO.: 2:16-CV-04779-JFW-E)
DEFENDANT CAVALRY SPV I, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                    13

### D.    Calvary Is Entitled To Invoke The Arbitration Agreement As Synchrony's Assignee.

Finally, Cavalry purchased all right, title and interest in the Account, and it therefore stands in Synchrony's shoes. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F. 3d 379, 414 (3d Cir. 2000) ("[A]ssignee . . . stands in the shoes of the assignor"). As the assignee and successor in interest of Synchrony, Cavalry may enforce the Arbitration Agreement.  *See, e.g., Martin,*  2014 WL 1338702, *5 (granting Cavalry's motion to compel arbitration based on agreement between customer and GE Capital Retail Bank: ". . . Martin's consent to be bound by the Credit Card Agreement also bound her to arbitrate any disputes with any party to whom GE assigned or transferred its rights or Martin's account."); *Caudill v. Cavalry SPV I, LLC*, WL 4230811, **1-7 (E.D. K.Y. Aug. 25, 2014) (granting Cavalry's motion to enforce arbitration provision in plaintiff's credit card agreement); *Montalbano v. Cavalry Portfolio Services, LLC*, 2013 WL 593988, **2-6 (W.D. Pa. Feb. 15, 2013) (granting motion to compel arbitration filed by Cavalry Portfolio Services, LLC).[9]

---

*Co. of Am. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 528-29 (1st Cir. 1985) (under *Prima Point* "arbitration clause is separable from the contract and is not rescinded by Beneficial's attempt to rescind the entire contract").

[9]  *See also Galbraith v. Resurgent Capital Services*, 2006 WL 2990163, *1 (E.D. Cal. Oct. 19, 2006) ("Defendants, however, are successors in interest and/or agents of the successors in interest and as such are entitled to the benefits of the arbitration clause under the ordinary principles of contract and agency and the doctrine of equitable estoppel. (Citation).");  *Jallo v. Midland Funding, LLC*, 2014 WL 5810203, *7 (S.D. Cal. Nov. 4, 2014) (granting debt buyer's motion to compel arbitration: "The broad language of the arbitration clause subjects to arbitration any claim arising out of the Agreement and against an assignee of the Agreement.");  *Wolf v. Langemeier*, 2010 WL 3341823, *4 (E.D. Cal. Aug. 24, 2010) (staying action pending arbitration: "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed.").

**E.** **Quiroz Must Arbitrate His Claims On An Individual (Non-Class) Basis, And This Case Should Be Stayed Pending The Outcome Of The Arbitration Proceedings**

As recently confirmed by the Supreme Court, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed with arbitration on issues to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25-26 (2011) (citations omitted; emphasis in original). Quiroz expressly agreed to arbitrate claims on an individual, non-class basis. In its decisions in *KPMG, AT&T Mobility*, and *Stolt-Nielsen*, the Supreme Court made it unmistakably clear that arbitration agreements governed by the FAA, like this one, must be enforced as written. *See KPMG*, 132 S. Ct. at 25 (the FAA "requires courts to enforce the bargain of the parties to arbitrate"); *AT&T Mobility*, 131 S. Ct. at 1748 (the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *Stolt-Nielsen S.A.*, 556 U.S. at 683 ("[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'").

The Arbitration Agreement does not attempt to hide the limitation on Quiroz's ability to arbitrate class claims in small print. To the contrary, it calls attention to this limitation in bold and all caps. *See* Koehler Decl., Ex. 3 (¶ 24) (". . . **MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; . . . YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL**

**ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY CARDHOLDER WHO IS NOT A JOINT OR ADDITIONAL CARDHOLDER WITH YOU ON YOUR ACCOUNT (AN "UNRELATED CARDHOLDER"), AND YOU AGREE THAT NO UNRELATED CARDHOLDER MAY BRING ANY CLAIMS AGAINST US ON YOUR BEHALF**.").

The FAA further requires that when a dispute has been sent to binding arbitration, the district court should stay the action pending the outcome of the arbitration proceeding.  9 U.S.C. § 3; *see AT&T Mobility LLC*, 131 S. Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'"); *see also Collins v. Burlington N. R. Co*., 867 F. 2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement).

## IV.   <u>CONCLUSION</u>

In light of the forgoing, Cavalry respectfully requests that the Court grant this motion to compel Quiroz to arbitrate his claims on an individual basis, and that the Court stay the action pending the outcome of the arbitration proceedings.


DATED:  October 19, 2016          SIMMONDS & NARITA LLP


                                        By:   <u>s/Tomio B. Narita</u>
                                              Tomio B. Narita
                                              Attorney for Defendant
                                              Cavalry SPV I, LLC