# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER QUIROZ,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CAVALRY SPV I, LLC,<br><br>　　　　Defendant. | Case No. 2:16-cv-04779-JFW-E<br><br>**STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION** |

STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION

Having read and considered the papers and arguments of the parties, the Court finds and concludes as follows:

## I. RELEVANT FACTUAL BACKGROUND

On January 4, 2011, plaintiff Javier Quiroz ("Quiroz") and his wife visited Santa Paula Dental Care, where his wife was obtaining dental work. *See* ECF No. 1 ¶ 12; ECF No. 32 ¶ 5. To pay for the services, Quiroz submitted an application to GE Money Bank, which is now named Synchrony Bank ("Synchrony"), for a CareCredit account.[1] *See* ECF No. 28-1 ¶ 6, Ex. 1; ECF No. 32 ¶ 7. All Synchrony CareCredit accounts are governed by a written agreement setting forth the terms and conditions of the account (the "Card Agreement"). *See* ECF No. 28-1 ¶ 7. As part of the account-opening process, Synchrony requires merchant providers, like Santa Paula Dental Care, to give customers a copy of the blank CareCredit account application, which includes the Card Agreement as an attachment. *Id*. ¶ 7, Ex. 2. The application expressly informs the customer that Card Agreement:

> **(1) INCLUDES A DISPUTE AND CLAIM RESOLUTION (INCLUDING ARBITRATION) PROVISION THAT MAY LIMIT MY RIGHTS UNLESS I REJECT THAT PROVISION UNDER THE AGREEMENT'S INSTRUCTIONS.**

*Id.* at 17 ¶ 3. Once the application is completed, the Card Agreement is detached from the application and given to the consumer by the merchant provider. *Id*. ¶ 7.

Once Synchrony approves the application and opens the account, the bank mails a copy of the Card Agreement to the customer, along with the actual credit card. *Id*. ¶ 8, Ex. 3. The Card Agreement provides: "By opening or using your account, you agree to the terms of the Agreement. The Agreement starts when (i) you give us an account application or (ii) you use your account or let someone else use it, whichever occurs first." *Id*. Ex. 3 at 32 ¶ 1.

The Card Agreement also includes a provision that provides for individual,

---

[1] Synchrony is a federally charted Savings Association based in Utah. *See* Doc. No. 28-1 at ¶ 1.

non-class arbitration of all disputes arising from or relating to the account (the "Arbitration Agreement"). *Id.* at 35 ¶ 24. It provides in relevant part as follows:

> **DISPUTE AND CLAIM RESOLUTION (INCLUDING ARBITRATION) PROVISION**
>
> **General/Requirement to Arbitrate. PLEASE READ THIS PROVISION CAREFULLY. UNLESS YOU SEND US THE REJECTION NOTICE DESCRIBED BELOW THIS PROVISION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**
>
> This Provision replaces any existing arbitration provision with us and will stay in force no matter what happens to your account, including termination. Upon demand, and except as otherwise provided below, you and we must arbitrate individually any dispute or claim between you, any joint cardholder and/or any additional cardholder, on the one hand; and us, our affiliates, agents and/or dealers/merchants/retailers or participating professionals, on the other hand, if the dispute or claim arises from or relates to your account. However, we will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) any claim by us that only involves our effort to collect money you owe us. However, if you respond to a collection lawsuit by claiming that we engaged in any wrongdoing, we may require you to arbitrate.
>
> **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY CARDHOLDER WHO IS NOT A JOINT OR ADDITIONAL CARDHOLDER WITH YOU ON YOUR ACCOUNT (AN "UNRELATED CARDHOLDER"), AND YOU AGREE THAT NO UNRELATED CARDHOLDER MAY BRING ANY CLAIMS AGAINST US ON YOUR BEHALF. CLAIMS BY YOU AND BY AN UNRELATED CARDHOLDER MAY NOT BE JOINED IN A SINGLE ARBITRATION.**

*Id.* The Arbitration Agreement also provides a specific procedure by which the customer can reject the requirement that he arbitrate his disputes:

> **Rejecting this Provision**. You may reject this Provision, in which case only a court may be used to resolve any dispute or claim. Rejection will not affect any other aspect of this Agreement. To reject, you must send us a notice within 60 days after you open your account or we first provide you with a right to reject this Provision. The notice must include your name, address, and account number and be mailed to GE Money Bank, P.O. Box 981429, El Paso, TX 79998-1429. This is the only way

-2-

you can reject this provision.

*Id.*

Thus, the Card Agreement was provided to Quiroz twice: once when he applied for the CardCredit account on January 4, 2011, and again when Synchrony mailed him the Card Agreement, along with the credit card, on January 5, 2011. *See* ECF No. 28-1 ¶¶ 6-10. Quiroz used the account to finance his wife's dental care, received monthly billing statements, and made payments in response to the statements. *Id.* ¶¶ 8-11; *see also* ECF No. 32 ¶¶ 5-9. Upon receiving the Card Agreement in the mail, Quiroz did not exercise his right to reject the Arbitration Agreement. *See* ECF No. 28-1 ¶¶ 13-14.

After Quiroz failed to pay the balance due, his account was charged off and sold to defendant Cavalry SPV I, LLC ("Cavalry"). *Id.* ¶ 15; ECF No. 28-2 ¶¶ 4-5.[2] Cavalry then began contacting Quiroz to attempt to collect the balance owed on the account, and eventually filed suit against him on July 2, 2015 in Ventura County Superior Court. *See* ECF No. 1 ¶¶ 19-20. On March 25, 2016, Cavalry dismissed that action without prejudice.

On June 29, 2016, Quiroz filed a putative class action Complaint against Cavalry. In his Complaint, Quiroz alleges that Santa Paula Dental Care failed to obtain his signature on a notice he alleges was required by the former version of section 654.3(c) of the California Business and Professions Code ("Section 654.3 Notice" or "Notice"). *Id.* ¶ 18; ECF No. 32 ¶ 7.[3] Quiroz also alleges that his unpaid balance on the account "was invalid and uncollectible" because his dentist failed to provide him the Section 654.3 Notice. *See* ECF No. 1 ¶ 18. In his Complaint, Quiroz alleges causes of action for: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; (2) violation of the Rosenthal Fair Debt Collection

---

[2] The Card Agreement expressly authorized Synchrony to "sell, assign or transfer any or all of [it's] rights or duties under the Agreement or [Quiroz's] Account." *See* ECF No. 28-1, Ex. 3 at 35 ¶ 26.

[3] The Code provision was effective from January 1, 2011 to December 31, 2014.

-3-
STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION

Practices Act, Cal. Civ. Code § 1788, *et seq.*; and (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. Id.* ¶¶ 37-74.

## II. <u>LEGAL STANDARD</u>

Section 2 of the FAA[4] mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility*, 131 S. Ct. at 1748 ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . . ."). The Supreme Court has repeatedly recognized the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987); AT&T Mobility LLC, 131 S. Ct. at 1745. In fact, the Supreme Court has confirmed that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility*, 131 S. Ct. at 1748.[5] The Court has stated the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

---

[4] There is no dispute that the FAA governs the Arbitration Agreement. *See* ECF No. 28-1, Ex. 3 at 35 ¶ 24.

[5] *See also Volt Info. Scis., Inc. V. Board of Trs. Of Leland Stanford Junior Univ.*, 27 489 U.S. 468, 479 (1989)*; Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 28 684 (2010).

-4-
STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION

proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (italics in original).

Under the FAA, arbitration must be compelled where: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)*; Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F. 3d 1277, 1284 (9th Cir. 2009).

### III. DISCUSSION

#### A. Quiroz Agreed To Arbitrate His Claims In This Action

The undisputed evidence establishes that Quiroz entered into an enforceable agreement to arbitrate. The Card Agreement expressly provides: "By *opening* or *using* your account, you agree to the terms of this Agreement. This Agreement starts when (i) you give us an account application we approve *or* (ii) you use your account or let someone else use it, whichever occurs first." ECF No. 28-1, Ex. 2 at 19 ¶ 1; *id*. Ex. 3 at 32 ¶ 1 (emphasis added). There is no dispute that Quiroz opened the account, used it to finance dental work for his wife, was mailed the Card Agreement, received billing statements, and made payments on the account in response to those billing statements. As a result, the Court concludes that Quiroz entered into the Card

Agreement, which contained the Arbitration Agreement.[6] Although the Arbitration Agreement provided for a specific procedure for opting out of it, Quiroz did not avail himself of that procedure.

Quiroz's contentions that he "do[es] not think" that he signed an application and did not receive the Card Agreement during his visit to the dentist's office (ECF No. 32 ¶¶ 7-8) are insufficient to refute the undisputed evidence before the Court.[7] Quiroz's signature was not required for him to accept the Card Agreement. ECF No. 28-1, Ex. 2 at 19 ¶ 1; *id.* Ex. 3 at 32 ¶ 1; *see also Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) (the FAA "does not require that the writing be signed by the parties."). Moreover, he does not dispute receiving the Card Agreement, which Synchrony mailed to him at the same address at which he received his statements. Thus, the Court finds that Quiroz agreed to arbitrate his claims pursuant to the Arbitration Agreement.

> **B.  Quiroz's Challenge To The Validity of the Card Agreement Based On His Dentist's Alleged Failure To Provide The 654.3 Notice Is For The Arbitrator To Decide**

Quiroz argues that he should not be bound by the Arbitration Agreement because he purportedly did not receive and sign the Section 654.3 Notice and, therefore, the Card Agreement and Arbitration Agreement were never "formed." *See* ECF No. 31 at 8:13-11:21. The Court disagrees.

---

[6] The Card Agreement and Arbitration Agreement each contain a choice-of-law provision that, under certain circumstances, call for the application of Utah law. Because the Court concludes that the same result follows under California or Utah law, the Court does not need to engage in a choice-of-law analysis.

[7] *See, e.g., Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011) ("it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends") (citations omitted); *Harden v. Lanier Worldwide, Inc.*, No. C07-5043-RJB, 2007 WL 836719, at *2 (W.D. Wash. Mar. 15, 2007) (party "must first unequivocally deny that the agreement had been made and must also produce some evidence to substantiate the denial"); *Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009) ("The combination of [plaintiff's] performance of the contract (paying off his debt to [defendant]) with a presumption that 'a properly mailed document is received by the addressee,' . . . , leads this Court to find that a valid arbitration agreement did exist between [plaintiff] and [defendant].") (citation omitted).

-6-
STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION

As explained by the Supreme Court, "[c]hallenges to the validity of arbitration agreements . . . can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (emphasis added). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* A challenge to the validity of the arbitration agreement itself must be determined by the court. *See id.* at 445 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967)). However, a challenge to the validity of the contract as a whole must be determined by the arbitrator. *See id.* (citing *Prima Paint*, 388 U.S. at 403-404).

If the Court finds that there is an enforceable arbitration agreement, then, "[a]s a matter of substantive federal arbitration law," the arbitration agreement is "is severable from the remainder of the contract." *See id.* at 445. An arbitration agreement survives even "in a contract that the arbitrator later finds to be void." *Id.* at 448; *see also Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (a challenge to the contract as a whole "does not prevent a court from enforcing a specific agreement to arbitrate"). Thus, an arbitrator may resolve the merits of a dispute even if the arbitrator finds the contract as a whole to be void for illegality or otherwise unenforceable. *See Buckeye*, 546 U.S. at 448-49 ("the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void"); *Rent-A-Ctr.*, 561 U.S. at 70-71 ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract") (quoting *Buckeye*, 546 U.S. at 445)).

Quiroz cannot avoid this well-settled authority by arguing that the Card Agreement was never "formed." Although the Ninth Circuit has held that "challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration," *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th

-7-
STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION

Cir. 2007) (italics in original), Quiroz's challenge under Section 654.3, despite how he characterizes it in his opposition to the motion to compel arbitration, does not go to the ***existence*** of the Card Agreement; instead, it goes to the Card Agreement's ***validity***. *See Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, No. CIV A H-05-3167, 2007 WL 114497, *21 (S.D. Tex. Jan. 10, 2007) (holding that failure to comply with statute "goes to the contract's validity, not its existence"); *Jensen v. Quik Int'l*, 820 N.E.2d 462, 467 (Ill. 2004) (statutory compliance with disclosure requirement was not "condition precedent" to contract formation).[8]

Plaintiff's challenge is similar to that in *Buckeye*, where the plaintiff opposed arbitration by arguing that the arbitration agreement was unenforceable because the contract was "illegal" under Florida's lending and consumer-protection laws. *See Buckeye*, 546 U.S. at 443. The Supreme Court explained, "The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded," *id.* at 444 n.1, and held that a challenge to an arbitration agreement based on a contract's alleged illegality was "a challenge to the validity of the contract as a whole . . . [that] must go to the arbitrator," *id.* at 449. As in *Buckeye*, Quiroz alleges that the failure to provide the Section 654.3 Notice "renders the underlying contract illegal and, therefore, void." *See* ECF No. 1 ¶ 53; *see also id*. ¶ 7 (credit accounts "violate this statute and are unlawful and uncollectible" and "credit agreements are unenforceable"); ECF No. 31 at 8:18 ("any contract allegedly entered in violation of [Section 654.3(c)] is illegal"). Thus, even assuming that Section 654.3 applies in this case (which is an issue that the Court does not reach), Cavalry's alleged failure to comply with it would not affect the validity of the Arbitration Agreement, only the validity of the Card

---

[8] The Court grants Cavalry's request for judicial notice of a tentative ruling and final order issued by Judge Jane Johnson of the Los Angeles County Superior Court in the matter *Martinez v. Cach, LLC, et al*., which granted the defendants' motion to compel arbitration under similar circumstances. *See* Doc. No. 28-3. The Court notes that Judge Johnson rejected the same argument Quiroz's attorneys make in this case. *See Id*. at 8.

-8-
STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION

Agreement, and challenges to the validity of the Card Agreement as a whole must be determined by the arbitrator. *See Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWX), 2015 WL 4263957 (C.D. Cal. July 10, 2015).

### C. The Arbitration Agreement Is Not Unconscionable

Quiroz contends that the Arbitration Agreement should not be enforced because it is both procedurally and substantive unconscionable. The Court disagrees.[9]

The Arbitration Agreement is not procedurally unconscionable because Quiroz had sixty days after he opened the account to opt out of the Arbitration Agreement but did not do so. *See, e.g., Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1111 (9th Cir. 2016); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013). In addition, the Arbitration Agreement is not procedurally unconscionable because it allegedly was not provided to Quiroz in Spanish. *See*, *e.g.*, *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014); *Sanchez v. CleanNet USA, Inc.*, 78 F.Supp.3d 747, 755 (N.D. Ill. 2015). There is no evidence that Quiroz attempted to ask questions about the Arbitration Agreement or requested a translator, and there is no evidence that such a request would have been refused.

Quiroz's substantive unconscionability arguments are also without merit. Quiroz claims that the Arbitration Agreement lacks mutuality because Cavalry is entitled to demand arbitration of counterclaims in collection lawsuits, but that he is not able to arbitrate the collection lawsuit itself. However, Quiroz has misread the Arbitration Agreement. Although the Arbitration Agreement states that Cavalry will not require Quiroz to arbitrate a collection lawsuit, ***it does not preclude Quiroz from compelling Cavalry to arbitrate*** such a case. *See* ECF No. 28-1, Ex. 3 at 35 ¶ 24.

---

[9] The same analysis applies under both California and Utah law. *See O'Brien v. Am. Exp. Co.*, 2012 WL 1609957, *4 (S.D. Cal. May 8, 2012) ("As in California, a two-pronged analysis is used [under Utah law] to determine whether a contract is unconscionable – substantive and procedural unconscionability.").

Therefore, the Arbitration Agreement provides rights to Qurioz that are broader than those provided to Cavalry.

Similarly, the Arbitration Provision does not allow Cavalry to impose additional fees on Quiroz by refusing to pay those fees. Instead, Cavalry only has (at most) discretion to refuse to pay the maximum amount the consumer must pay to either JAMS or AAA, which Quiroz concedes is no more than $250. That is not unconscionable.

Finally, the Utah choice-of-law clause does not render the Arbitration Agreement unconscionable. The choice-of-law provision in the case Quiroz relies on, *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227 (2015), *reh'g denied* (July 29, 2015), *review denied* (Sept. 16, 2015), is distinguishable. Unlike in *Pinela*, this Court and not the arbitrator must determine the validity of the Arbitration Agreement. *See Meadows v. Dick's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1084 (N.D. Cal. 2015). In addition, unlike in *Pinela*, nothing in the Arbitration Agreement prevents the arbitrator from conducting a choice-of-law analysis to determine whether California statutory law might apply to Quiroz's substantive claims. *See* ECF No. 28-1, Ex. 3 at 35 ¶ 24.

For the reasons stated herein, Cavalry's motion to compel arbitration is GRANTED and this action is STAYED pending the results of arbitration.

DATED: November 16, 2016

_____
Hon. John F. Walter
United States District Judge

STATEMENT OF DECISION GRANTING DEFENDANT CAVALRY SPV I, LLC'S MOTION TO COMPEL ARBITRATION